UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STELIOS MANTALIS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASCEND LABORATORIES, LLC and ALKEM LABORATORIES LTD.,<br><br>Defendants. | Civil Action No. 2:20-cv-04329-BRM-JAD<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Stelios Mantalis ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendants Ascend Laboratories, LLC ("Ascend") and Alkem Laboratories Ltd. ("Alkem") (collectively, "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

1. This is a class action lawsuit regarding Defendants' manufacturing, distribution, and sale of the generic medication metformin that contains dangerously high levels of N-nitrosodimethylamine ("NDMA"), a carcinogenic and liver-damaging impurity.

2. Metformin is a prescription medication that has been sold under brand names such as Glucophage. Metformin is used to control high blood sugar in patients with type 2 diabetes. However, Ascend's manufacturing process has caused metformin to contain dangerously high levels of NDMA.

3. NDMA is a semivolatile organic chemical. According to the U.S. Environmental

Protection Agency, NDMA "is a member of N-ni-trosamines, a family of potent carcinogens." While NDMA is not currently produced in the United States other than for research purposes, it was formerly used "in production of liquid rocket fuel," among other uses. NDMA is listed as a "priority toxic pollutant" in federal regulations. *See* 40 CFR § 131.36. Exposure to NDMA can cause liver damage and cancer in humans. NDMA is classified as a probable human carcinogen, and animal studies have shown that "exposure to NDMA has caused tumors primarily of the liver, respiratory tract, kidney and blood vessels."

4. On March 2, 2020, Valisure, an online pharmacy registered with the U.S. Drug Enforcement Agency and Food & Drug Administration, "detected high levels of N-Nitrodimethylamine ('NDMA') in specific batches of prescription drug products containing metformin."[1] This included metformin manufactured by Defendants.[2]

5. Defendants have not yet issued a recall of metformin and continues to tout on its website that it is "committed to quality and safety." However, these representations are false, as Defendants' metformin medication contains the carcinogenic impurity NDMA.

**A. Metformin Is Marketed As Safe**

6. Defendants have always marketed metformin as a safe and effective product and has continued to do so despite the findings of Valisure.

7. Metformin is one of the most successful drugs in history. Metformin was the fourth most prescribed medication in the United States in 2017, with over 78.6 million

---

[1] VALISURE, VALISURE CITIZEN PETITION ON METFORMIN 1 (2020), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Metformin-v3.9.pdf (last accessed June 26, 2020) (hereinafter "VALISURE PETITION").
[2] *Id.* at 9.

prescriptions.[3]

8. On Ascend's website page for its generic medications, Ascend touts that it "deliver[s] quality, trust, and value."

9. Ascend also notes that "for close to 20 years [consumers] have associated the Ascend name with an unwavering commitment to quality, service, and value."

10. Alkem likewise notes that it "work[s] persistently towards the production of apex quality generic products, branded generics, specialty products, active pharmaceutical ingredients and nutraceuticals."

11. Alkem also notes that "[q]uality and Alkem are synonymous."

**B. Metformin Contains Dangerous Levels Of NDMA**

12. Contrary to the above assertions, metformin contains dangerously high levels of NDMA that would not be present if the medication were properly manufactured. As noted in paragraph 4, *supra*, Valisure has found unacceptable levels of NDMA in samples of metformin, including samples from Ascend.

13. While the cause of the NDMA contamination in metformin is still being investigated, Valisure notes that "the presence of NDMA in metformin products may be primarily due to contamination during manufacturing as opposed to a fundamental instability of the drug molecule."[4]

14. The FDA has "set strict daily acceptable intake limits on NDMA in pharmaceuticals of 96 nanograms."[5] But Valisure found that Ascend's metformin has an NDMA

---

[3] *The Top 300 of 2020*, CLINCALC, https://clincalc.com/DrugStats/Top300Drugs.aspx (last accessed June 26, 2020).
[4] VALISURE PETITION 3.
[5] *Id*. at 1.

3

content that is 11 times the daily intake limit.[6]

| Company | Dose (mg) | Type | Lot | NDMA (ng/tablet) | Common Tablets/Day | Times Over Acceptable Daily Intake Limit of NDMA |
|---|---|---|---|---|---|---|
| Ascend Laboratories, LLC | 1000 | Metformin IR | 4200061B | 529 +/- 107 | 2 | 11.0X |

15. The presence of NDMA in metformin is particularly troubling because the medication is taken daily.[7]

16. Pursuant to its findings, Valisure recommended a recall of Ascend's metformin medications.[8]

C. **Plaintiff Was Harmed By Purchasing And Consuming Defective Metformin Manufactured By Defendants**

17. Plaintiff and the Class were injured by the full purchase price of their metformin medications. These medications are worthless, as they contain harmful levels of NDMA. As the medications expose users to NDMA well above the legal limit, the medications are not fit for human consumption. Plaintiff is further entitled to statutory damages, damages for the injury sustained in consuming high levels of acutely toxic NDMA, and for damages related to Defendants' conduct.

18. Plaintiff brings this action on behalf of himself and the Class for equitable relief and to recover damages and restitution for: (i) breach of the implied warranty of merchantability, (ii) unjust enrichment, (iii) fraudulent concealment, (iv) fraud, (v) conversion, (vi) violation of New York General Business Law § 349, and (vii) violation of New York General Business Law § 350.

---

[6] *Id*. at 9.
[7] *Id.* at 1.
[8] *Id.* at 11-12.

## PARTIES

19. Plaintiff Stelios Mantalis is a citizen of New York who resides in Queens County, New York. Mr. Mantalis has been taking metformin since 2011. During all relevant time periods, Mr. Mantalis was prescribed, purchased and consumed metformin manufactured by Defendants, for which he paid a co-pay of approximately $6.32. Mr. Mantalis originally learned about the metformin defect on the news. Further investigation revealed that Mr. Mantalis has been using the defective metformin manufactured by Ascend for some time. When purchasing metformin from Defendants, Mr. Mantalis reviewed the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer, distributor, and pharmacy that the medications were properly manufactured, free from defects, and safe for their intended use. Mr. Mantalis relied on these representations and warranties in deciding to purchase metformin from Defendants, and these representations and warranties were part of the basis of the bargain, in that he would not have purchased metformin from Defendants if he had known it was not, in fact, properly manufactured and free from defects. Mr. Mantalis also understood that each purchase involved a direct transaction between himself and Ascend because his medication came with packaging and other materials prepared by Ascend, including representations and warranties that his medications were properly manufactured and free from defects.

20. Defendant Ascend Laboratories, LLC is a New Jersey corporation with a principal place of business at 339 Jefferson Road, Suite 1010, Parsippany, New Jersey 07054. Ascend conducts substantial business in the United States, and specifically in the States of New Jersey and New York. Ascend has been engaged in the manufacturing, distribution, and sale of defective metformin in the United States, including in the States of New Jersey and New York.

21. Defendant Alkem Laboratories Ltd. is a foreign entity headquartered in Mumbai, India. Defendant Alkem states on its website that the United States is the "focal point" of Alkem's international operations, and that "we manufacture and supply a wide-range of generics … in the United States." Alkem on its own and/or through its subsidiaries, including wholly owned subsidiary Ascend, regularly conducts business throughout the United States and its territories and possessions. At all times material to this case, Alkem has been engaged in the manufacturing, sale, and distribution of adulterated and/or misbranded metformin in the United States and the State of New Jersey.

## JURISDICTION AND VENUE

22. This Court has personal jurisdiction over Defendants because Defendant Ascend maintains its principal place of business in New Jersey and Defendants have purposefully availed themselves of this forum by engaging in suit-related conduct in this District, including the manufacturing and sale of contaminated metformin medications.

23. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

24. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant Ascend maintains its principal place of business in this District and Defendant Alkem, as a foreign entity, may be sued in any judicial district.

## CLASS ALLEGATIONS

25. Plaintiff seeks to represent a class defined as all persons in the United States who

purchased metformin manufactured by Ascend (the "Class"). Specifically excluded from the Class are persons who made such purchases for the purpose of resale, Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

26. Plaintiff also seeks to represent a subclass of all Class members who purchased metformin in New York (the "Subclass").

27. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

28. **Numerosity.** The members of the Class and Subclass are geographically dispersed throughout the United States and the State of New York and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of members in the Class and Subclass. Although the precise number of Class members is unknown to Plaintiff, the true number of Class and Subclass members is known by Defendants and may be determined through discovery. Class and Subclass members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

29. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class and Subclass members. These common legal and

factual questions include, but are not limited to, the following:

    (a)    whether the metformin manufactured by Defendants contains dangerously high levels of NDMA, thereby breaching the implied warranties made by Defendants and making metformin unfit for human consumption and therefore unfit for its intended purpose;

    (b)    whether Defendants knew or should have known that metformin contained elevated levels of NDMA prior to selling the medication, thereby constituting fraud and/or fraudulent concealment;

    (c)    whether Defendants have unlawfully converted money from Plaintiff and the Class and Subclass;

    (d)    whether Defendants are liable to Plaintiff and the Class and Subclass for unjust enrichment;

    (e)    whether Defendants are liable to Plaintiff and the Class and Subclass for fraudulent concealment;

    (f)    whether Plaintiff and the Class and Subclass have sustained monetary loss and the proper measure of that loss;

    (g)    whether Plaintiff and the Class and Subclass are entitled to declaratory and injunctive relief;

    (h)    whether Plaintiff and the Class and Subclass are entitled to restitution and disgorgement from Defendants; and

    (i)    whether the marketing, advertising, packaging, labeling, and other promotional materials for metformin are deceptive.

30.    **Typicality.** Plaintiff's claims are typical of the claims of the other members of

the Class and Subclass in that Defendants mass marketed and sold defective metformin to consumers throughout the United States. This defect was present in all of the metformin manufactured by Defendants. Therefore, Defendants breached its implied warranties to Plaintiff and Class and Subclass members by manufacturing, distributing, and selling the defective metformin. Plaintiff's claims are typical in that he was uniformly harmed in purchasing and consuming the defective metformin. Plaintiff's claims are further typical in that Defendants deceived Plaintiff in the very same manner as they deceived each member of the Class and Subclass. Further, there are no defenses available to Defendants that are unique to Plaintiff.

31. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class and Subclass. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class and Subclass.

32. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendants. It would, thus, be virtually impossible for the Class and Subclass, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class and Subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the

benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

33. In the alternative, the Class and Subclass may also be certified because:

    (a) the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class and Subclass members that would establish incompatible standards of conduct for the Defendants;

    (b) the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and Subclass members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

    (c) Defendants have acted or refused to act on grounds generally applicable to the Class and Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class and Subclass as a whole.

## COUNT I
### Breach Of The Implied Warranty Of Merchantability
### (On Behalf Of The Class And Subclass)

34. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

35. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and the Subclass against Defendants.

36. Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers, impliedly warranted that metformin (i) would not contain elevated levels of NDMA and (ii) is generally recognized as safe for human consumption.

37. Defendants breached the warranty implied in the contract for the sale of the defective metformin because the metformin could not pass without objection in the trade under the contract description, the metformin was not of fair or average quality within the description, and the metformin was unfit for its intended and ordinary purpose because the metformin manufactured by Defendants was defective in that it contained elevated levels of carcinogenic and liver toxic NDMA, and as such is not generally recognized as safe for human consumption. As a result, Plaintiff and Class and Subclass members did not receive the goods as impliedly warranted by Defendants to be merchantable.

38. Plaintiff and Class and Subclass members purchased metformin in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the intended purpose.

39. The metformin was not altered by Plaintiff or Class and Subclass members.

40. The metformin was defective when it left the exclusive control of Defendants.

41. Defendants knew that the metformin would be purchased and used without additional testing by Plaintiff and Class and Subclass members.

42. The defective metformin was defectively manufactured and unfit for its intended purpose, and Plaintiff and Class and Subclass members did not receive the goods as warranted.

43. As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class and Subclass members have been injured and harmed because: (a) they would not have purchased metformin on the same terms if they knew that metformin contained harmful levels of NDMA, and is not generally recognized as safe for human consumption; and (b)

metformin does not have the characteristics, ingredients, uses, or benefits as promised by Defendants.

## COUNT II
## Unjust Enrichment
### (On Behalf Of The Class And Subclass)

44. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

45. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

46. Plaintiff and the Class and Subclass conferred a benefit on Defendants in the form of monies paid to purchase Defendants' defective metformin.

47. Defendants voluntarily accepted and retained this benefit.

48. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for medications unfit for human use, it would be unjust and inequitable for Defendants to retain it without paying the value thereof.

## COUNT III
## Fraudulent Concealment
### (On Behalf Of The Class and Subclass)

49. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

50. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

51. Defendants had a duty to disclose material facts to Plaintiff and the Class and Subclass given their relationship as contracting parties and intended users of metformin. Defendants also had a duty to disclose material facts to Plaintiff and the Class and Subclass,

namely that they were in fact manufacturing, distributing, and selling harmful metformin unfit for human consumption, because Defendants had superior knowledge such that the transactions without the disclosure were rendered inherently unfair.

52. Defendants possessed knowledge of these material facts. Since at least December 2019, Defendants have been aware that NDMA was detected in metformin-containing medications in other nations.[9] During this time, Plaintiff and Class and Subclass members were using their medications without knowing they contained dangerous levels of NDMA.

53. Defendants failed to discharge their duty to disclose these materials facts.

54. In so failing to disclose these material facts to Plaintiff and the Class and Subclass, Defendants intended to hide from Plaintiff and the Class and Subclass that they were purchasing and consuming metformin with harmful defects that was unfit for human use, and thus acted with scienter and/or an intent to defraud.

55. Plaintiff and the Class and Subclass reasonably relied on Defendants' failure to disclose insofar as they would not have purchased the defective metformin manufactured sold by Defendants had they known it contained unsafe levels of NDMA.

56. As a direct and proximate cause of Defendants' fraudulent concealment, Plaintiff and the Class and Subclass suffered damages in the amount of monies paid for the defective metformin.

57. As a result of Defendants' willful and malicious conduct, punitive damages are warranted.

---

[9] *FDA Investigates NDMA in Metformin*, U.S. PHARMACIST (Dec. 20, 2019), https://www.uspharmacist.com/article/fda-investigates-ndma-in-metformin (last accessed June 26, 2020).

## COUNT IV
## Fraud
### (On Behalf Of The Class and Subclass)

58. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

59. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

60. As discussed above, Defendants provided Plaintiff and Class and Subclass members with materially false or misleading information about the metformin manufactured by Defendants. Specifically, Defendants marketed metformin as safe for human consumption. As indicated above, however, these representations are false and misleading as Defendants' metformin medications contained elevated levels of NDMA.

61. The misrepresentations and omissions of material fact made by Defendants, upon which Plaintiff and Class and Subclass members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class and Subclass members to purchase defective metformin.

62. Defendants knew or should have known that its metformin was contaminated with this harmful impurity, but continued to manufacture it nonetheless. Since at least December 2019, Defendants have been aware that NDMA was detected in metformin medicines in other nations.[10] During this time, Plaintiff and Class and Subclass members were using the medication without knowing it contained dangerous levels of NDMA.

63. The fraudulent actions of Defendants caused damage to Plaintiff and Class and

---

[10] *FDA Investigates NDMA in Metformin*, U.S. PHARMACIST (Dec. 20, 2019), https://www.uspharmacist.com/article/fda-investigates-ndma-in-metformin (last accessed June 26, 2020).

Subclass members, who are entitled to damages and other legal and equitable relief as a result.

64. As a result of Defendants' willful and malicious conduct, punitive damages are warranted.

## COUNT V
### Conversion
**(On Behalf Of The Class And Subclass)**

65. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

66. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

67. Plaintiff and the Class and Subclass have an ownership right to the monies paid for the defective metformin manufactured by Defendants.

68. Defendants have wrongly asserted dominion over the payments illegally diverted to them for the defective metformin. Defendants have done so every time that Plaintiff and the Class and Subclass bought metformin over the counter.

69. As a direct and proximate cause of Defendants' conversion, Plaintiff and the Class and Subclass suffered damages in the amount of the payments made for each time they bought metformin over the counter.

## COUNT VI
### Violation Of New York General Business Law § 349
**(On Behalf Of The Subclass)**

70. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

71. Plaintiff brings this claim individually and on behalf of the members of the proposed Subclass against Defendants.

72. New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

73. In its sale of goods throughout the State of New York, Defendants conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

74. Plaintiff and members of the Subclass are consumers who purchased products from Defendants for their personal use.

75. By the acts and conduct alleged herein, Defendants have engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that metformin (i) would not contain dangerously high levels of NDMA and (ii) is generally recognized as safe for human consumption.

76. The foregoing deceptive acts and practices were directed at consumers.

77. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of metformin to induce consumers to purchase the same.

78. By reason of this conduct, Defendants engaged in deceptive conduct in violation of New York's General Business Law.

79. Defendants' actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and members of the Subclass have sustained from having paid for and used Defendants' products.

80. As a result of Defendants' violations, Plaintiff and members of the Subclass have suffered damages because: (a) they would not have purchased metformin on the same terms if they knew that metformin contained high levels of NDMA; and (b) metformin does not have the

characteristics, uses, benefits, or qualities as promised.

81. On behalf of himself and other members of the Subclass, Plaintiff seeks to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT VII**
**Violation Of New York General Business Law § 350**
**(On Behalf Of The Subclass)**

82. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

83. Plaintiff brings this claim individually and on behalf of the members of the proposed Subclass against Defendants.

84. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

85. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

86. Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

87. Defendants' false, misleading, and deceptive statements and representations of fact were and are directed towards consumers.

88. Defendants' false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

89. Defendants' false, misleading, and deceptive statements and representations of

fact have resulted in consumer injury or harm to the public interest.

90. As a result of Defendants' false, misleading, and deceptive statements and representations of fact, Plaintiff and the Subclass have suffered and continue to suffer economic injury.

91. As a result of Defendants' violations, Plaintiff and members of the Subclass have suffered damages due to said violations because: (a) they would not have purchased metformin on the same terms if they knew that metformin contained elevated levels of NDMA and is not safe for human consumption; and (b) metformin does not have the characteristics, uses, benefits, or qualities as promised.

92. On behalf of himself and other members of the Subclass, Plaintiff seeks to recover his actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

(a) For an order certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative for the Class and Subclass and Plaintiff's attorneys as Class Counsel;

(b) For an order declaring the Defendants' conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: June 30, 2020

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Andrew J. Obergfell*
     Andrew J. Obergfell

Andrew J. Obergfell
Max S. Roberts *(pro hac vice* app. forthcoming*)*
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aobergfell@bursor.com
       mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher *(pro hac vice* app. forthcoming*)*
Neal J. Deckant *(pro hac vice* app. forthcoming*)*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
       ndeckant@bursor.com

*Attorneys for Plaintiff*